**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| VANDER DAVIS #323-484 | : | |
|    Plaintiff | | |
| | : | |
|    v. | | Civil Action No.  JFM-10-2009 |
| | : | |
| SECRETARY OF THE DEP'T OF PUBLIC SAFETY & CORRECTIONAL SERVICES, | : | |
| KATHLEEN GREEN , Warden, and RODERICK SOWERS, Warden. | : | |
| | ****** | |
|    Defendants | | |

**MEMORANDUM**

Pending are a Motion to Dismiss or for Summary Judgment (ECF No. 19) filed by counsel on behalf of the Secretary of the Department of Public Safety and Correctional Services, Kathleen Green, Warden of Eastern Correctional Institution (ECI), and Roderick Sowers, Warden of Roxbury Correctional Institution (RCI), and plaintiff's opposition. ECF No. 24. After review of the papers, exhibits, and applicable law, defendants' Motion for Summary Judgment (ECF No. 19)[1] will be GRANTED IN PART as to claims raised pursuant to 42 U.S.C. § 1983 against Warden Sowers and Warden Green and DENIED IN PART as to claims raised under the Americans with Disabilities Act.

**BACKGROUND**

Vander Davis (Davis), an inmate currently housed at the Maryland Correctional Institution- Jessup (MCI-J), filed a complaint under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), alleging: 1) he received inadequate medical treatment for his hearing

---

[1] Because the parties have submitted exhibits that are outside of the pleadings and the court has relied on these materials in adjudication of this matter, the motion will be construed one for summary judgment under Rule 56. *See* Fed.R.Civ.P.12(d).

impairment while confined at RCI and ECI;[2] and 2) it took too long to transfer him to a suitable corrections facility for deaf inmates. Complaint, pp. 4-5. Davis contends that his hearing impairment was worsened by his housing assignment. *See id.* Further, he complains that his housing at ECI was unsuitable because he unable to hear the prison intercom system which caused him to miss meals, announcements, and other activities, including four parole hearings. ECF No. 1, Plaintiff's Exhibit 2; ECF No. 24, Attachments.

Davis claims that he was not provided necessary accommodations for his disability for over a year and a half after arriving at ECI and approximately six years after first entering DOC custody.[3] As relief, Davis requests damages for violations of his rights under the Eighth and Fourteenth Amendments, for negligence, and for violations of the Americans with Disabilities Act.

## FACTS

Davis was housed primarily at RCI from November 7, 2004, until August 28, 2008, when he was transferred to ECI. Defendants' Exhibit 1, Declaration of Kathy Casper, ¶ 2. On May 28, 2009, Davis was assigned to a special needs tier at ECI.

On June 17, 2010, Davis was transferred to MCI-J, the facility designated by the Division of Correction (DOC) for hearing impaired and deaf inmates. MCI-J provides interpreters and assistive technology for hearing impaired inmates. Defendants' Exhibit 5, Declaration of

---

[2] Davis also alleges negligence, presumably as to medical care he received. For reasons that follow herein, Davis' claims of negligent medical care do not raise a constitutional cause of action. Davis may bring claims of negligent medical care in state court, This court expresses no opinion as to the merits of such an action.

[3] *See* Complaint p. 5; Plaintiff's Exhibit 1, pp. 3, 5-6; ECF No. 24, Plaintiff's Opposition. p. 2.

Warden Kathleen Green. On July 22, 2010, Davis filed the instant complaint.

**A. ARPs and Request Slips**

Davis asserts that he notified medical providers of his disability when he arrived at ECI. Plaintiff's Exhibit 2, ARP No. 323-484, p. 3.

On January 22, 2009, Davis was examined by an audiologist, provided a hearing aid for his right ear, and informed that his "left ear was to[o] damaged for [a] hearing aid to help." ECF No. 1, Complaint, ¶ III; Plaintiff's Exhibit, 1, Evaluation of Jenifer Cushing, audiologist. pp. 3-6. The audiologist recommended moving Davis to a correctional facility better suited to his special needs. Davis was transferred to a facility for deaf inmates over a year and a half later and six years after entering DOC custody.[4] *See* Complaint p. 5; Plaintiff's Exhibit 1, pp. 3, 5-6; ECF No. 24, Plaintiff's Opposition. p. 2.

When transfer did not occur, Davis filed an Administrative Remedy Procedure (ARP) request for a suitable placement. Plaintiff's Exhibits 2 and 4. The ARP was dismissed. Davis ultimately filed a grievance with the Inmate Grievance Office. Plaintiff's Exhibit 5. On June 2, 2009, the grievance was denied by Paula Williams, Associate Director as follows:

> According to your grievance, since your arrival at ECI in August of 2008, you have requested to be transferred to another institution because of your medical need. Any grievance complaining of this situation was therefore due to be filed, if at all, by September, 2008. This grievance was filed on April 20, 2009, approximately eight months later. I conclude that you failed to file your grievance within the 30 days required by COMAR 12.07.01.05(A). This time limitation has not been waived for good cause shown. COMAR 12.07.01.05(F). COMAR 12.07.01.06(8)(3) therefore

---

[4] Davis claims he first alerted DOC officials about his hearing impairment in 2005. *See e.g.* ECF No. 1, Plaintiff's Exhibit 1, Letter from Maryland Hearing Aid Service, dated September 23, 2005 addressed to Plaintiff at RCI; ECF No. 24, Attachment Plaintiff's Sick Call Request, dated January 15, 2005.

>  requires that this grievance be dismissed as wholly lacking in merit.
>
>  Accordingly, your grievance is hereby administratively dismissed pursuant to Md. Code Ann. Corr. Serv. § 10-207 (b)(1) as having been determined to be, on its face, wholly lacking in merit, and this file is closed.

Plaintiff's Exhibit 5.

In a request slip dated February 6, 2009, Davis asked to be placed in housing suitable for deaf inmates. Plaintiff's Exhibit, 2, p. 5. On February 10, 2009, Officer W. Bailey responded that if Davis was interested in a transfer to the unit for hearing impaired inmates at MCI-J, Bailey would obtain the necessary documentation from the medical department. *See id.* On February 12, 2009, Davis asked for a transfer to MCI-J, and on February 17, 2009, Officer Bailey informed him that a request had been sent to the medical department. *See id*. p. 6.

On February 20, 2009, Davis filed an ARP which was signed by A. Diggs, Correctional Officer, II, in which Davis wrote: "I am a disabled inmate who talked with Dr. Cush on 1/22/09. Dr. Cush stated that he has <u>prescribed</u> that I be housed in a suitable environment. This has not happened." Plaintiff's Exhibit 2, p. 1 (emphasis in original).

On March 10, 2009, Davis inquired about the status of his request to move to MCI-J, adding that "things are not working out here." *Id*., p. 7. On March 16, 2009, Officer Bailey responded: "I am still waiting for the requested info from the medical department." On June 16, 2009, Nancy Bealer, R.N., wrote: "This note is in response to inmate Vander Davis' letter to Inmate Grievance Office. Mr. Davis has been residing on the special needs tier in housing unit 8. Medical does not feel that any further action is necessary at this time." Defendants' Exhibit 7.

In an ARP request date stamped April 7, 2009, Davis complained that the audiologist had

4

recommended suitable housing for his hearing impairment. Plaintiff's Exhibit 4, p. 2. Davis complained that when he first entered Division of Correction custody in 2004, he stated during his intake examination that he was hearing impaired, but it has taken 3 years and 7 months to receive any treatment, and he had completely lost hearing in his left ear because of the delay. *See id.*

Davis avers that on May 6, 2009, he was informed that his parole hearing had been postponed for a fourth time because ECI could not accommodate a hearing impaired inmate for a hearing by teleconference. ECF No. 24, Attachment to Opposition.

On May 28, 2009, Davis was assigned to the special needs tier at ECI. Davis asserts that he was placed on the special needs tier only after he was assaulted by his cell mate because Davis used the light to inform officers that he wanted to go to breakfast, could not hear the intercom calls for chow, and the doors did not open unless inmates stood by their doors so officers knew they wanted to go to breakfast. ECF No. 24. Opposition, p. 5.

On June 6, 2009, Davis submitted a request slip stating that he is hearing-impaired and cannot understand the ECI audio system and again requested a transfer to MCI-J. Davis asked whether the necessary documentation could be signed. At the bottom of his request is the following unsigned and undated response: "You have to be at the institution for 18 months before you can." Plaintiff's Exhibit 2, p. 8. Defendants do not address this comment in their dispositive motion.

On October 20, 2009, Robert D. Webster, informed Captain Christina Tyler at ECI:

> Inmate Davis was in the cell with inmate Ronald Wilkes # 331-151 on the special needs tier. Both inmates were interviewed and inmate Wilkes agreed to assist Davis with his hearing problem. Wilkes would make sure that Davis went to Chow and went on all passes for him. Inmate Wilkes would also help Davis

> if he did not understand what was being said to him. Inmate Davis was thankful and appreciated the help. Officer's [sic] on the tier handed him his passes in person for any activity he may have had. I was in the process of obtaining a loaner T.V. with caption capability for his used, however, he was transferred from ECI prior to receiving the T.V.

Defendants' Exhibit 8.

On February 7, 2010, Davis submitted ARP # ECI-07-96-10 signed by B. Miller, Correctional Officer I, in which Davis stated that he is hearing impaired and relies on his cell door to be open so that he can go to meals. ECF No. 24, Attachment to Opposition. Davis noted that on several occasions he has missed meals because his cell door was not open. *See id*. He requested transfer to a more suitable environment. *See id.*

### STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " B*ouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to .... the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia*

*Colleton Medical Center., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

### I. INADEQUATE MEDICAL CARE

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When prison officials show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id*. at 104. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. *Estelle*, 429 U.S. at 106.       To bring a claim alleging inadequate medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id*.

Defendant Sowers was warden of RCI from June 1, 2003 to March 23, 2008. Exhibit 4, Declaration of Warden Sowers at ¶2. He attests that he was not involved in, nor interfered with or delayed medical treatment for Davis. Defendants' Exhibit 4 at ¶6. According to the correspondence log maintained in the warden's office, Davis sent two letters to Warden Sowers. Exhibit 1 at ¶4.[5] On February 11, 2005, Davis wrote to Warden Sowers stating that he was not receiving medical assistance in reference to a gunshot wound and he wanted to see a specialist. *Id*. He also complained that he had been waiting treatment for three months. *Id*. The correspondence was sent to Charlotte Walkley, a CMS nurse, for handling. *Id*. On June 4, 2005, Mr. Davis sent another letter to Warden Sowers regarding an ARP Davis had filed concerning medical issues. *Id*. This correspondence was forwarded to Ellie Bowles, the Medical Contractor Administrator. *Id*.

Warden Kathleen Green attests that she does not and did not direct the medical care of inmates. Exhibit 5 at ¶1. She was not involved in, interfered with or delayed Davis' medical care. *Id*. On June 16, 2009, Nancy Bealer, R.N., responded to a letter from the Inmate Grievance Office that Davis was on a special needs tier. "Medical does not feel that any further action is necessary at this time." Exhibit 7.

None of the defendants named is alleged to have been personally involved in Davis' medical care.[6] To the extent Davis seeks to hold defendants culpable based on respondeat

---

[5] On June 10, 2005, Davis submitted an ARP request concerning his hearing loss. The ARP response, signed by Warden Sowers, was dismissed on July 27, 2005, because an ear specialist was to be consulted. ECF No. 24, p. 4, and Attachment, ARP #RCI-0461-05.

[6] Apart from naming the Secretary of the Department of Public Safety & Correctional Services as a defendant, Davis does not allege any involvement by the Secretary in his medical care. Davis claims generally that the DOC delayed or failed to provide him with hearing aids which resulted in severe damage to his ears. ECF No. 24, Opposition, p. 8. He does not, however, allege defendants impeded or

8

superior or supervisor liability, supervisory prison officials cannot be held liable merely for actions or failures to act on the part of the medical staff. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Carter v. Morris*, 164 F.3d 215, 220-21 (4th Cir. 1999). Supervisory officials can only be liable where it is shown they either failed to timely provide needed care, deliberately interfered with doctors' performance or tacitly authorized or were deliberately indifferent to prison physicians' constitutional violations. *Miltier,* 896 F.2d at 854-55.

As non-medical prison personnel, Warden Sowers and Warden Green were entitled to rely on the judgment of medical professionals. Consequently, summary judgment will be entered in favor of defendants in regard to plaintiff's claims of inadequate and delayed medical treatment.

**II. ADA CLAIM**

Title II of the Americans with Disabilities Act (ADA) applies to the administration of state prisons. S*ee Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 208 (1998). Title II of the (ADA) provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

To establish a prima facie case under the ADA, a complainant must show that: 1) he has a disability; 2) he was either excluded from participation in or denied the benefits of some public

---

otherwise interfered with a recommendation of a medical provider to secure hearing aids for him. If Davis were to identify the correctional officials responsible for the alleged failure to provide hearing aids or might intend to fault medical providers with constitutionally inadequate medical treatment, he may file a separate complaint naming those individuals as defendants.

entity's services, programs, or activities for which he was otherwise qualified; and 3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. George Mason University*, 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir.1999). States are obliged to make reasonable modifications to comply with the ADA, but are only obligated to make modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade County,* 480 F.3d 1072, 1082 (11th Cir.2007). In *United States v. Georgia*, the Supreme Court elaborated that the "deliberate refusal of prison officials to accommodate [a prisoner's] needs in such fundamentals as mobility, hygiene, [and] medical care constituted exclusion from participation in or denial of benefits of "the prison's services, programs, or activities." 546 U.S. 151, 157 (2006).

Although a plaintiff must show intentional discrimination to recover compensatory damages under the ADA, *see Kolstad v. American Dental Association*., 527 U.S. 526, 533-34, (1999), a plaintiff need not show that a defendant harbored a discriminating animus. *See Proctor v. Prince George's Hospital Center*, 32 F .Supp. 2d 820, 828-829 (D.Md.1998) (*quoting Bartlett v. New York State Bd. of Law Examiners*, 970 F.Supp. 1094 (S.D.N.Y.1997)). "Rather, intentional discrimination is shown by an intentional, or willful, violation of the Act itself." *Id*; *see also Paulone v. City of Frederick,* __F. Supp. 2d__, 2011 WL 1675237, * 9 (D. Md. 2011) (noting "[c]ase law in this district endorses the deliberate indifference standard" for failure to provide reasonable accommodation under Title II of the ADA).

The parties do not dispute that Davis is an individual with disability under the ADA.

Instead, defendants assert that Davis cannot show they acted with intentional discrimination. The court disagrees. Davis has submitted sufficient evidence to create a genuine issue of material fact whether defendants willfully failed to provide accommodations needed in light of his known hearing loss. Davis has presented enough evidence to support a finding that defendants knew of his disability, his need for a "suitable environment," and his difficulty accessing prison's services, programs, or activities. The evidence indicates that defendants were aware that necessary accommodations were available at the special unit at MCI-J. Defendants do not contend that such a move was not possible, but instead argue that they did not have the requisite discriminatory intent in delaying to doing so. Defendants' argument in support of summary judgment is unavailing because, as noted, discriminatory intent is satisfied by a showing of an intentional violation of the Act. *See Proctor*, 32 F.Supp.2d at 829.

## CONCLUSION

For the aforementioned reasons, defendants' motion for summary judgment will be granted as to Davis' claims under 42 U.S.C. § 1983, but denied as to his ADA claims. A separate order follows. Davis will be granted twenty-eight days to move for appointment of counsel.

July 20, 2011 /s/
Date J. Frederick Motz
United States District Judge